**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KARL RABENHORST,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No.   1:26-cv-04635** |
| | ) | |
| **MERIT SYSTEMS PROTECTION BOARD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>APPEAL ON MSPB JUDGEMENT FOR LACK THERE OF</u>**
**<u>QUORUM ON REVIEW OF REMOVAL BASED ON DISCRIMINATION</u>**

**INTRODUCTION**

Petitioner worked for the Department of Homeland Security ("DHS") continuously for fourteen years. Petitioner held a career professional position with DHS as a GS-12 Technical Hazards Program Specialist, until DHS removed him from federal service on May 1, 2023.

Believing the DHS' action to be wrongful and discriminatory, Mr. Rabenhorst sought a hearing before an administrative Judge.  From March 19 through 21, 2024, a hearing was conducted before MSPB Administrative Judge Mary L. Hauser.  Closing arguments were due on May 24, 2024, with an initial decision due within 60 days.  On February 5, 2025, Mr. Rabenhorst filed a Motion to Take Notice of recently issued Executive Orders banning illegal Diversity, Equity and Inclusion (DEI) policies and practices.  On June 30, 2025, Mr. Rabenhorst filed a Motion for Decision. On July 1, 2025, Judge Hauser issued a Notice to Parties reporting that a decision would be issued within 48 hours.   On July 2, 2025, Judge Hauser, upheld the Removal of Mr. Rabenhorst and denied all the Affirmative Defenses of the Agencies Removal was motivated Discrimination based on sex and age, and Retaliation for opposing the Discrimination and further denied the

Affirmative Defenses of being a Whistleblower by filing with the OIG. (See Exhibit A) Mr. Rabenhorst then filed a Petition to Review his termination to Board itself. Rather than hear the merits of Mr. Rabenhorst's appeal, the Board dismissed his case for lack of Quorum. (See Exhibit B)

Accordingly, for each of the foregoing reasons independently, this Court should decide the Petition for Review Board's decision of Removal as unjust and remand Mr. Rabenhorst' case to the Regional Office or reverse the Removal.

## STATEMENT OF JURISDICTION

This is an appeal from a March 27, 2026, Final Order of the U.S. Merit Systems Protection This Court has jurisdiction over this appeal of the Board's decision pursuant to 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9). (See Exhibit A)

## STATEMENT OF THE CASE

I.      **Mr. Rabenhorst' Appeal of His Termination**

A.      **The MSPB's initial Decision on July 2, 2025,** Mr. Rabenhorst appealed his discipline of removal to the Board on August 6, 2025 alleging that he had been improperly disciplined which as discriminatory and that the DHS and had engaged in prohibited personnel practices. The Board's March 27, 2026 Lack of Quorum Order came over seven months after submission.

## SUMMARY OF ARGUMENT

The Board has jurisdiction to hear Mr. Rabenhorst' wrongful termination appeal, based on the Board's lack of a Quorum and the Right described in it's ruling on right of appeal because the original Petition was for discrimination based on sex and age and retaliation for complaining about the discrimination along with whistleblower protection

## ARGUMENT

**I.       Standard of Review**

This Court may reverse a decision of the Board if the decision is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1279 (Fed. Cir. 2011). Whether the Board has jurisdiction is a question of law that this Court reviews *de novo. See, e.g.*, Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1147 (Fed. Cir. 1999).

**II.      The Board Has Jurisdiction over Mr. Rabenhorst's Appeal**

This Court has jurisdiction over this appeal of the Board's decision pursuant to 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9). (See Exhibit A)

## CONCLUSION

For the foregoing reasons, Petitioner Karl Rabenhorst respectfully requests that this Court overturn the Board's decision on Removal or return his case to the Board for a proceeding on the merits.

Dated: April 23, 2026

Respectfully submitted,

BY:**/s/Michael T. Smith**
Michael T. Smith #6180407IL
Attorney for Plaintiff
3030 Warrenville Road
Suite 450-42
Lisle, Illinois 60532
(847) 450-1103

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KARL RABENHORST,               )

                  )

        Petitioner,       )

                  )

   vs.               )     No.   **1:26-cv-04635**

                  )

MERIT SYSTEMS PROTECTION BOARD,  )

                  )

        Respondent.    )

<u>**APPEAL ON MSPB JUDGEMENT FOR LACK THERE OF**</u>
<u>**QUORUM ON REVIEW OF REMOVAL BASED ON DISCRIMINATION**</u>

# EXHIBIT A

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
CENTRAL REGIONAL OFFICE


| | |
|---|---|
| KARL RABENHORST, | DOCKET NUMBER |
|        Appellant, | CH-0752-23-0296-I-1 |
|     v. | |
| DEPARTMENT OF HOMELAND | DATE: July 2, 2025 |
|   SECURITY, | |
|        Agency. | |


Michael Thomas Smith, Schaumburg, Illinois, for the appellant.

Dawn L. Williams, Washington, D.C., for the agency.


BEFORE
Mary L. Hauser
Administrative Judge


INITIAL DECISION


INTRODUCTION

Appellant Karl Rabenhorst challenges the May 1, 2023 decision of the Department of Homeland Security, Federal Emergency Management Agency (FEMA or agency) to remove him from his position as Emergency Management Specialist. Initial Appeal File (IAF), Tab 1. The Board has jurisdiction over this timely appeal. *See* 5 U.S.C. §§ 7511(a)(1)(A), 7512(1), 7513(d), 7701.

For the reasons explained below, the agency's decision to remove Appellant is affirmed.

BACKGROUND

Appellant was hired as a GS-12 Technological Hazards Program Specialist in FEMA's Technological Hazards Branch, National Preparedness Division, in

Chicago in September 2009. IAF, Tab 8 at 157. On February 8, 2015, he was reassigned from that position to Emergency Management Specialist in the Regional Office of Region V, National Preparedness Division, and remained in that position until the date of his removal. *Id.* at 155.

On November 18, 2021, FEMA Region V held an all-hands meeting via Zoom, where the Deputy Regional Administrator was presenting on the Equity Lab initiative. *Id.* at 199. At approximately 11:50 a.m., during the presentation, Appellant posted the following chat message to all participating in that Zoom meeting:

> My neighborhood is preparing to defend our families and homes from the fourth wave of politically sponsored domestic terrorism (ref:18 U.S.C.§2331(5)) that has befallen Kenosha since May of 2020. Last August, BLM and ANTIFA published the address of a 56 year-old breast cancer patient living in our subdivision with instructions to bum her home to the ground because her son was a School Resource Officer at a Title 1 Middle School in Kenosha. When she was evacuated from her home in an unmarked police car, they were followed from 1-94 to Lake Geneva, WI (26miles) by a caravan of vehicles with blacked-out, out-of-state license plates and [her] whole family spent the week in protective custody in Galena, IL. We spent the week repelling invaders in cars with blacked-out, out-of-state license plates. The camera shop that processed our wedding photos is but one of dozens of businesses that are now charred holes in the ground. When does "Equity" apply to us?

IAF, Tab 8 at 200, Tab 35 at 3, Tab 44 at 4.[1] Throughout that day, multiple individuals reported this incident to FEMA Office of Professional Responsibility (OPR), stating they found it "inappropriate and disrespectful" and "racist." IAF, Tab 8 at 192, 199, 203-04, 207, 209-10.

---

[1] The parties agreed to several undisputed material facts, which were outlined in the Order and Summary of Prehearing Conference. IAF, Tab 35 at 3-4, Tab 36. Each party acknowledged agreement that proposed undisputed facts 1, 2, 6, 8, 9 and 11 were undisputed following the issuance of the Order and Summary of Prehearing Conference. IAF, Tabs 37, 44. The parties' stipulations to these facts "will satisfy a party's burden of proving the fact alleged." 5 C.F.R. § 1201.63.

On June 9, 2022, a FEMA employee mistakenly sent an email to a distribution list which had over 2,500 recipients. IAF, Tab 8 at 176, 322-23, Tab 50-8 at 147. Several other people, including a Region X Federal Coordinating Officer, responded to everyone in the email chain, saying they were not responsible for that program. IAF, Tab 8 at 322-23. After several such responses were made to the entire group, Appellant replied to all participants in the email chain stating, "ARE ANY OF YOU COMPETENT? IF SO, WHY DO YOU CONTINUE TO 'REPLY ALL' TO EVERYONE ON THE 'TRANSIT PARTICIPANT'S' GROUP EMAIL?" IAF, Tab 35 at 3, Tab 37, Tab 44 at 4. Over the course of the rest of that day, 15 different FEMA employees of various levels including line employees, branch chiefs, and division directors from both inside and outside Region V, contacted Appellant's first line supervisor, Sean O'Leary, National Preparedness Branch Chief, Region V, to report that they found Appellant's email inappropriate. IAF, Tab 8 at 250, 314, 324-402.

On November 2 and 3, 2022, Appellant facilitated an Integrated Preparedness Planning Workshop held on Adobe Connect. IAF, Tab 8 at 305-06, Tab 50-8 at 24. Over 100 federal, state, local and private sector participants attended the workshop. Tab 50-8 at 24. During one session of the workshop, Appellant and speaker TG[2] encountered technical difficulties when uploading and displaying TG's presentation. IAF, Tab 8 at 178. During the technical difficulties, Appellant said "effin' stupid" into a live microphone, and the comment was broadcast to all conference participants. *Id.* at 178-79.

On February 15, 2023, O'Leary proposed Appellant's removal from federal service. *Id.* at 182-87. The proposal charged Appellant with three specifications of conduct unbecoming a federal employee based on the three incidents described above. *Id.* Appellant submitted a written response in which he did not deny the conduct but instead claimed that it did not warrant disciplinary action. *Id.* at 173-

---

[2] To preserve the privacy of the employee, only his initials are used in this decision. His full name is reflected in the record.

4

79.  On May 1, 2023, Vincent Parisi, Director of the National Preparedness Program for Region V, issued a decision sustaining the charge and removing Appellant effective that day. *Id.* at 160-62.

Appellant appealed the removal decision to the Board. IAF, Tab 1. After allowing the parties to engage in discovery to develop the record, I held a three-day hearing on this matter. The parties submitted written summations, and the record closed on May 24, 2024. IAF, Tabs 53, 55, 56. After the close of the record, Appellant filed a pleading, "Appellant's Motion for Judicial Notice," requesting that I take notice of several Executive Orders that were issued after the hearing, and he argued that the disciplinary action should be reversed. IAF, Tab 59.

I have thoroughly considered all of the testimony and evidence received into the record prior to the closing of the record in rendering my decision. As set forth below, I find the agency has met its burden of demonstrating that Appellant engaged in the misconduct described, that there is a nexus between the disciplinary action and the efficiency of the service and that the penalty of removal was reasonable under the circumstances. Further, Appellant has failed to meet his burden of proving his affirmative defenses by preponderant evidence. Finally, the Appellant's motion for judicial notice is denied and was not considered in adjudicating the merits of this appeal.

## ANALYSIS AND FINDINGS

In an adverse action the agency has the burden to prove by a preponderance of evidence the charge and specifications set forth in the notice of proposed disciplinary action. 5 U.S.C. § 7701(c)(1)(B); *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990); *Royster v. Department of Justice*, 58 M.S.P.R. 495, 498 (1993); 5 C.F.R. § 1201.56(b)(1)(ii). A preponderance of the evidence is defined as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q). Proof

of one or more specifications supporting a charge is sufficient to sustain a charge. *Burroughs,* 918 F.2d at 172; *Greenough v. Department of the Army*, 73 M.S.P.R. 648, 656-57 (1997), *appeal dismissed*, 119 F.3d 14 (Fed. Cir. 1997) (Table). The agency is required to prove only the essence of the charge, not every single fact it alleged in support of the charges. *See Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995); *Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 8 (2014). An administrative judge must sustain a charge if she sustains any of the specifications under it. However, in the penalty analysis the administrative judge may take into account the agency's failure to prove other specifications. *Tryon v. U.S. Postal Service*, 108 M.S.P.R. 148, ¶ 5 (2008).

In addition to proving the charges against the appellant, the agency must show that the action taken promoted the efficiency of the service. 5 U.S.C. § 7513(a); *Chin v. Department of Defense*, 2022 MSPB 34, ¶22. The first issue under this standard—the nexus requirement—is whether there is a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his duties satisfactorily or some other legitimate government interest. *Chin*, 2022 MSPB 34, ¶23; *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 18 (2013); *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012). The agency also must prove that the penalty imposed is within the tolerable limits of reasonableness considering the relevant factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302-06 (1981). *See Chin*, 2022 MSPB 34, ¶23; *Shibuya*, 119 M.S.P.R. 537, ¶ 18; *Hall*, 117 M.S.P.R. 687, ¶ 6.

**The Charge of Conduct Unbecoming a Federal Employee is Sustained**

There are no specific elements of proof for a charge of conduct unbecoming. *See LaChance v. Merit Systems Protection Board*, 147 F.3d 1367, 1372 (Fed. Cir. 1998); *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Thus, the agency must establish the charge by proving

Appellant committed the acts described in the specifications. *Canada*, 113 M.S.P.R. 509, ¶ 9; *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 42 (2010), *aff'd*, 635 F.3d 526 (Fed.Cir. 2011). A charge of conduct unbecoming typically involves conduct that is improper, unsuitable, or otherwise detracts from one's character or reputation. *See e.g., Long*, 113 M.S.P.R. 190, ¶ 42; *Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992).

Appellant does not dispute that he engaged in the conduct described in the three specifications supporting the charge of conduct unbecoming a federal employee. IAF, Tab 8 at 173-79, 251, Tab 35, Tab 44. Rather, he claims that his actions did not amount to misconduct, and therefore, do not warrant disciplinary action. IAF, Tab 8 at 173-79.

**Specification 1 is Sustained**

Specification 1 described the comment Appellant posted to all participants during the November 18, 2021 Region V All-Hands Meeting. IAF, Tab 8 at 182. Appellant admitted that he sent the comment to all participants during the meeting. IAF, Tab 8 at 251, Tab 35, Tab 44. Following that meeting, several employees reached out to members of agency management to express concern about Appellant's post. IAF, Tab 8 at 199-210. One of the complaining employees observed that the comment had nothing to do with the meeting discussion. *Id*. at 209, 264. She further complained that the comment was "laced with conspiracy theories, prejudice and nonsense" and that Appellant's "inability to exhibit any restraint today [was] deeply upsetting." *Id*. at 209. Another employee more broadly observed that the scenario described in the comment was "completely irrelevant" to the agency's programs, policies and authorities. *Id*. at 199. She also noted that the comment was "inappropriate and disrespectful to [the] Deputy Regional Administrator." *Id*. Another employee observed that the comment did not align with FEMA values and that she was offended by it. *Id*. at 207. This employee further noted that she felt that the all-hands meeting was not a safe space. *Id*. at 260. As Parisi, the deciding official, explained in his

testimony, the comment raised several issues that were not within the scope of the presentation. IAF, Tab 50-8 at 109. The presentation did not involve anything about Wisconsin or Kenosha or any of the crimes mentioned in Appellant's chat post. *Id*. Further, Parisi noted that the statement was unprovoked and unprofessional. *Id.* at 109-10.

Appellant claimed that "[c]onsidering the response to [his] question regarding the applicability of 'Equity' to his community, the question was apparently pertinent [to the presentation]." IAF, Tab 8 at 175. He asserts that the November 18, 2021 meeting's "focus was to highlight FEMA Region 5's DEI policies, initiatives, and online resources . . . and commend FEMA Region 5 employees participating in the DEI initiatives." IAF, Tab 57 at 23. He argues that the DEI initiatives violated 42 U.S.C. sections 2000e(2) and (3). *Id*. Thus, he suggests that his remarks were responsive to agenda items that he believed to be violations of antidiscrimination statutes that adversely impacted him. *Id*. However, even if he believed that his post was a statement in opposition to what he perceived to be a discriminatory animus toward himself or others, the Board has noted that not all conduct related to an employee's opposition to discrimination is immune from discipline. *See Johnson v. Department of the Army*, 48 M.S.P.R. 54, 61 (1991). The Board will consider the context in which purported inappropriate remarks are made to ascertain whether they constitute misconduct. *Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673 (2011); *citing Daigle*, 84 M.S.P.R. at 628.

The evidence demonstrates that Appellant's post was disruptive in that it generated complaints from participants necessitating an investigation. The post was little more than an angry rant about various situations that were not related to the topic of the presentation. Further, the post was cast at a large audience of individuals who were not in a position to take action on Appellant's stated concerns and who further found the post offensive. Thus, Appellant's argument fails.

Appellant also argues that his comment did not involve the use of government equipment for accessing, viewing, storing, copying, purchasing or transmitting nudity, sexually explicit, offensive or hateful materials, and "contained no graphics, identified no individual or demographic groups, and used no derogatory or vulgar language, slurs or euphemisms." IAF, Tab 8 at 175. These are not the sole markers for determining whether his conduct was unbecoming. As set forth in the proposal, pursuant to FEMA Manual 255-3-1, FEMA employees are responsible for "acting in a manner that will ensure their conduct does not negatively reflect on the Federal Government and [FEMA]." IAF, Tab 8 at 184, Tab 50-8 at 117. FEMA's standards of conduct further require all personnel to be "professional in their communications…contact with supervisors, subordinate, coworkers, other FEMA employees, affiliates, and members of the public." IAF, Tab 8 at 184, 213. "Professional" means "being polite, respectful, helpful, considerate and patient." *Id*. The participants' reaction to Appellant's post noted that it was disrespectful to the Deputy Regional Administrator. As Parisi observed, Appellant "crossed the line and did it in a forum and a way that was not appropriate, that was unprofessional because of the way that [it] was, was delivered and also received by a number of employees." IAF, Tab 50-8 at 118. Further, nothing about the post was helpful to the participants or the presenters. As noted, it was off topic and seemingly addressed only Appellant's perspective of unrelated issues that were happening in his community.

In light of the circumstances, I find that the agency has met its burden of demonstrating that the comment was improper and detracted from Appellant's reputation. Specification 1 is sustained.

**Specification 2 is Sustained**

The second specification in the agency's conduct unbecoming charge involves Appellant's June 9, 2022, email response to the distribution list of 2,500 recipients. IAF, Tab 8 at 182-83. Again, Appellant does not dispute that he

emailed the response described in the specification. IAF, Tab 35 at 3, Tab 44 at 4, Tab 51-7 at 164. However, he testified that he only sent the message to the original sender and approximately 12 other people who had responded to the original email. IAF Tab 51-7 at 164-65. His testimony is inconsistent with the record, which reflects that Appellant's response was sent to the same distribution list of approximately 2,500 recipients that the original email had been sent to. IAF, Tab 8 at 309. Therefore, I do not find it credible.[3]

Appellant attempts to justify his response because he: "was responding to an ongoing, time sensitive, event impacting thousands of people during which multiple people publicly proclaimed that they were 'not responsible;'" that his action was "clear and concise, contained no graphics, identified no individual or demographic group, and used no derogatory or vulgar language, slurs, or euphemisms;" and that his "terse and timely action effectively ended the . . . 'Reply All' responses but could have been misinterpreted by anyone lacking military experience." *Id.* at 177. In contrast, O'Leary received approximately 15 emails from other agency employees and managers complaining that Appellant's message was unnecessary, harsh, offensive, unprofessional, inappropriate, hostile and discourteous. IAF, Tab 8 at 183, 289, 335, 345, 350-51, 357, 362, 367, 372, 377, 382, 387, 392, 402. O'Leary characterized the message as "combative and

---

[3] In this decision, to resolve issues of credibility and the weight to be given to written statements and other documentary evidence, I have been guided by *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981), and *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Under *Hillen*, when resolving issues of credibility, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in questions; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) the witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. 35 M.S.P.R. at 458-62.

confrontational." *Id.* at 309. Another Branch Chief noted that the reply was "really inappropriate and does not reflect well upon this Agency's Core Values." *Id.* at 314. A Deputy Director complained to O'Leary that the response was not appropriate, and "much worse than the e-mail chain." *Id.* at 340. Other managers had to take time out of their workdays to field complaints from their own teams or otherwise address Appellant's email message. *Id.* at 362, 387, 392-93, 402.

To the extent that Appellant characterized the message as clear, concise and effective, this does not address the level of disruption he caused. Similarly, the fact that a few people responded directly to Appellant and praised his response (*see* IAF, Tab 51-7 at 165), does not undermine the agency's position that the message was unbecoming. Appellant's message to the 2,500 individuals on the distribution list did not provide helpful, relevant or job-related information. The message was hostile in tone and appeared to be a provocation. As noted, many recipients found the message inappropriate and complained to their superiors, ultimately taking agency officials away from other work to address it. Similarly, Appellant's argument ignores that his message was an unprofessional and inappropriate response to a few email messages that he could have simply ignored and allowed the original sender's chain of supervision address with her directly. In light of these circumstances, I find the agency has met its burden of demonstrating that the response was unbecoming in that it was improper, unsuitable and detracted from Appellant's character and reputation. Specification 2 is sustained.

**Specification 3 is Sustained**

As with the first two specifications, Appellant did not deny the conduct described in specification 3. IAF, Tab 51-7 at 166-67. Again, Appellant argues that the conduct—calling a coworker "effin stupid" on a live microphone during a workshop that included over 100 federal, state, local and private sector participants did not amount to actionable misconduct. IAF, Tab 8 at 178-79. In his response to the proposed removal, Appellant referred to the incident as a hot

mic "mishap" and attempted to justify it based on his perceived failures of others, specifically "[TG]'s multiple failures" to timely provide presentation materials or follow login instructions and O'Leary's "impertinent meddling." *Id*. In his closing summation, he referred to his comment as an "inadvertent hot mic 'rhetorical question.'" IAF, Tab 57 at 7, 9, 12.

I do not find Appellant's argument that the incident was "inadvertent" to be compelling. Appellant was the "host" of a virtual meeting involving 120 participants, many of whom were external agency partners and stakeholders. IAF, Tab 8 at 178, Tab 50-8 at 24. He was responsible for gathering and coordinating the materials that the presenters were using that day. IAF, Tab 8 at 178. As the host, he should have been acutely aware that he could possibly have a "hot mic" incident and exercised a modicum of discretion in the things he uttered while the meeting was underway. Although Appellant may not have been aware he would be overheard, the words he used were neither inadvertent nor unintentional.

Likewise, Appellant's argument that the comment was directed at O'Leary, rather than TG (*see* IAF, Tab 51-7 at 168), makes it no less unprofessional and no less offensive to both the individual to whom it was directed and the audience who is entitled to expect a level of professionalism and decorum when participating in official meetings with a federal government agency. IAF, Tab 50-8 at 150. Appellant also attempts to minimize the remark as "shop talk." *Id*. However, Parisi noted that this was a professional call with over 100 federal and state employees on the line, and therefore, not an appropriate forum for "shop talk." *Id.*; *see e.g., Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 58 (upholding charge of conduct unbecoming where the appellant, among other things, told a coworker he had to cancel an appointment because his "lazy boss was golfing"). Accordingly, I find the agency has met its burden of demonstrating that the comment was unbecoming in that it was improper and

12

detracted from Appellant's and the agency's character and reputation. Specification 3 is sustained.

Appellant asks me to fault the agency generally because neither the proposing nor the deciding officials could recite the "essential elements" of a conduct unbecoming charge. IAF, Tab 50-8 at 34-35, 106-07, Tab 57 at 24. As noted above, a charge of conduct unbecoming does not have specific elements to it. That is why it is considered a "general" charge, and why the agency is then required to prove not only the conduct described under the charge but also that the conduct was improper, unsuitable, or otherwise detracted from the individual's character or reputation. Both O'Leary and Parisi testified concerning the evidence supporting each of the three specifications under this charge. IAF, Tab 50-8 at 16, 19-20, 22, 25, 34, 56-57, 60-61, 86, 111, 137-38. Both O'Leary and Parisi articulated why they considered the conduct unbecoming. And, their explanations and reasoning were reasonable and well-supported by the documentary evidence. Therefore, Appellant's argument is unavailing.

**The Agency Has Demonstrated a Nexus between the Conduct and the Efficiency of the Service**

The nexus requirement, for purposes of determining whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate government interest. *Scheffler v. Department of the Army*, 117 M.S.P.R. 499, ¶ 9 (2012), *aff'd*, 522 F. App'x 913 (Fed. Cir. 2012); *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n. 2 (1987). The Board's reviewing court has held that there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred in part at work. *See Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir.1987); *Ray*, 97 M.S.P.R. 101, ¶ 60. Further, the Board has found that conduct unbecoming in the form of disrespectful conduct "is unacceptable and not conducive to a stable

working atmosphere, and that agencies are entitled to expect employees to conduct themselves in conformance with accepted standards." *Ray*, 97 M.S.P.R. 101, ¶ 58 (citing *Wilson v. Department of Justice*, 68 M.S.P.R. 303, 310 (1995)). Accordingly, I find that the agency has met its burden of demonstrating a nexus between Appellant's conduct and the agency's legitimate interests.

**Affirmative Defenses**

Appellant alleged several affirmative defenses, including race (white), sex (male), national origin (of German heritage) and age discrimination and reprisal for engaging in protected Equal Employment Opportunity (EEO) activities. IAF, Tab 13 at 6-22, Tab 35 at 8. He also alleges that the removal was due to whistleblower retaliation. IAF, Tab 13 at 22-26, Tab 35 at 8. Finally, he claimed that the agency's disciplinary action violated 44 C.F.R. § 350, Tab 35 at 8. An appellant bears the burden of proving his affirmative defenses by preponderant evidence.[4]

> **Appellant Failed to Demonstrate That the Agency's Removal Action Was Motivated by Discrimination or in Retaliation for Opposing Discrimination**

In addressing claims of prohibited retaliation or discrimination based on age, race, color, religion, sex, or national origin, the Board applies a motivating factor standard of causation. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-21. To prove motivating factor causation, an appellant need only show that the prohibited consideration played any part in the way the decision was made, even if the agency would ultimately have made the same

---

[4] Appellant previously alleged that he "was removed from federal service for asking a question in accordance with his First and Fourteenth Amendment Rights." IAF, Tab 13 at 12, 21, Tab 31 at 5. However, he did not directly claim a violation of First or Fourteenth Amendment rights as an affirmative defense. I issued an Order and Summary of Prehearing Conference and advised the parties that they must identify inaccuracies or objections in writing no later than January 24, 2024. IAF, Tab 35 at 16. That order did not list a First or Fourteenth Amendment violation as an affirmative defense. *Id*. at 8. Appellant did not submit a correction claiming that this should have been included in his affirmative defenses.

14

decision in the absence of the discriminatory motive. *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 11; *Pridgen*, 2022 MSPB 31, ¶ 21. But-for causation is a higher standard than motivating factor and requires proof that the prohibited consideration was necessary to the outcome of the agency's decision. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1740 (2020); *Wilson*, 2024 MSPB 3, ¶ 15; *Pridgen*, 2022 MSPB 31, ¶¶ 21-22 & n.4.

An appellant may prove discrimination under either of those different standards of proof by various methods, and no one method is the exclusive path to a finding of liability. *Wilson*, 2024 MSPB 3, 2024 MSPB 3, ¶ 12; *Pridgen*, 2022 MSPB 31, ¶ 23. Those methods may include: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as a "convincing mosaic"; (b) comparator evidence, consisting of evidence, whether or not rigorously statistical, that employees similarly situated to the appellant received systematically better treatment; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" (*i.e.*, the burden-shifting standard under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Id.*, ¶ 24. Thus, an appellant may proceed by showing that discrimination was a motivating factor in the agency's action or by showing that discrimination was a but-for cause of the agency's action. *Wilson,* 2024 MSPB 3, ¶ 12; *Pridgen*, 2022 MSPB 31, ¶¶ 21-25.

Here, Appellant has failed to meet his burden to show that discrimination or retaliation was a motivating factor in his removal. Notably, he has not come forward with any evidence of similarly-situated comparators outside any of the protected categories he identified who were treated differently than he was after engaging in similar misconduct. He has not shown that the agency's reasons for

disciplining him were unworthy of belief. Finally, he has not offered a mosaic of circumstances that would support an inference that discriminatory motive was at play in this disciplinary action.

Appellant seemingly attempts to show circumstances that would support an inference of discriminatory motive against him as a white male over the age of 40 and of German heritage by claiming that FEMA's diversity, equity and inclusion programs favor individuals of color, women and members of the LGBTQ community over white males. IAF, Tab 13 at 7-14. However, none of the various circumstances and examples he described show that the agency was actively promoting the interests of one group over those of another or giving preferential treatment to any particular group. Instead, the examples Appellant proffered reflect an effort to create awareness of unconscious bias, systemic or institutional policies that have had the effect of disadvantaging certain protected groups among those whom FEMA serves (as opposed to FEMA employees), and reference materials that may help broaden understanding and discussion of the issues. IAF, Tab 45 at 222-38. Finally, Appellant has not proffered a single example to support his claim that the agency condoned singling out white males for disparagement or subjecting them to systematic discriminatory treatment.

Appellant points to his own situation, where he was removed from a deployment to Puerto Rico after having interpersonal conflicts with other employees on site. IAF, Tab 13 at 15-19. He asserts that the individual who terminated his deployment was a woman and that she handled the matter in a way that "was intended to intimidate and cower every man in sight, and impose undisputed power of [three individuals whom Appellant described as 'entry level females . . . a generation younger than most of the male aviation professionals']." *Id.* at 16-17, 19. In October 2018, Appellant was suspended for 13 days for his involvement in the incidents in Puerto Rico as well as other misconduct. IAF, Tab 8 at 404-13.

16

I find that the record evidence does not support an inference that the agency's decision to terminate Appellant's deployment to Puerto Rico or the October 2018 decision to discipline him reflects discriminatory animus. Appellant was involved in a series of incidents involving disagreements and interpersonal conflicts with several females who were younger than he was. IAF, Tab 8 at 408-10, Tab 13 at 15-19. Although there is disagreement on the precise language he used during these incidents, Appellant does not deny that he was involved in the encounters that formed the basis of the agency's actions. IAF, Tab 52-5 at 76-77, 79. Moreover, neither Appellant's nor the witnesses' accounts of these encounters reflect that any of the women were exhibiting discriminatory bias. His age, race, gender and national origin were not mentioned in any of their descriptions of the incidents.[5] The mere fact that they did not share Appellant's protected characteristics is not, without more, a basis for inferring a discriminatory animus.

Similarly, Appellant complains that he was instructed not to wear a shirt with an embroidered logo that clearly had a swastika on it to the workplace. IAF, Tab 51-7 at 158-59, 52-5 at 71-72. In 2018, he was formally counselled not to wear a shirt with a swastika on it. IAF, Tab 51-7 at 159. However, he was not disciplined or reprimanded as a result of this incident. *Id.* at 158. Again, while Appellant believes this incident was handled unfairly, he has not explained how, nor is it evident from the record, this supports a finding of discriminatory motive.

Appellant mentioned disparate impact in his response to the affirmative defenses order and shared some statistics, which if accepted as true, would show that individuals identifying as white comprise a smaller share of the FEMA workforce than the percentage of white individuals in the civilian labor force. IAF, Tab 13 at 6.[6] However, this is insufficient to support an inference of

---

[5] In contrast, Appellant explicitly refers to the sex and age of the individuals associated with the incident. IAF, Tab 13 at 15-16.

discrimination on a disparate treatment or a disparate impact theory.[7] A disparate impact discrimination claim requires an appellant to (1) identify a facially neutral employment practice; (2) demonstrate a disparate impact upon the group to which they belong, and (3) prove causation. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 993-95 (1988); *Hidalgo v. Department of Justice*, 93 M.S.P.R. 645, ¶12 (2003); *Pigford v. Department of the Interior*, 75 M.S.P.R. 250, 256 (1997). Appellant has failed to identify any facially neutral employment practice that had a disparate impact on any of the protected groups he identifies with—white, male, over 40 years old, of German descent.

Further, it is not clear that the civilian labor force statistics Appellant identified reflect a bias against whites in favor of black applicants., as Appellant seems to argue. Where special qualifications are required to fill a job, demographic indicators like the civilian labor force statistics by themselves may have little probative value. *See Hazelwood School District v. United States*, 433 U.S. 299, 309-10 (1997); *Mayor of the City of Philadelphia v. Educational Quality League*, 415 U.S. 605, 620-21 (1974). In such situations, a comparison should be made between the employer's workforce and those in the labor force who possess the relevant qualifications, *i.e.*, the qualified applicant pool. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650-51 (1989); *Johnson v. Transportation Agency of Santa Clara County, California*, 480 U.S. 616, 632 (1987); *Hazelwood*, 433 U.S. at 308. In other words, without more, I find that the statistical information Appellant submitted is insufficient to support an inference of discrimination, intentional or otherwise.

---

[6] Appellant did not attach any documentary evidence or cite to any references to support the statistical data he submitted.

[7] One exhibit submitted by Appellant reflected that 82% of emergency management leaders were white and 71% of emergency management directors were male. IAF, Tab 45 at 229. If accepted as true, this does not reflect a systemic bias against whites, males or white males.

Finally, Appellant initiated EEO counselling regarding the termination of his Puerto Rico deployment on October 31, 2017.[8]  IAF, Tab 52-5 at 97. Appellant testified that he also filed an EEO complaint in August 2018 after the agency proposed his suspension in connection with, among other things, his conduct in Puerto Rico.  IAF, Tab 52-5 at 32-33.  Appellant filed another EEO complaint about the instruction not to wear a shirt with a swastika on it.  IAF, Tab 51-7 at 158-59.  However, he did not file this complaint until after he received the notice of proposed removal in 2021.  *Id*.  O'Leary admitted that he was aware of the August 2018 complaint but stated that he was unaware of any other EEO complaints filed by Appellant.  IAF, Tab 50-8 at 28-30.  Parisi provided unrebutted testimony that he was not aware of any of Appellant's EEO activities.  Other than O'Leary's knowledge of only one instance of EEO activity, Appellant has offered no evidence that supports an inference that retaliation was a motivating, much less contributing, factor in the removal action.

Based on the foregoing, I find that Appellant has failed to meet his burden of proving by preponderant evidence that discriminatory or retaliatory animus was a motivating factor in his removal.

### Appellant Has Failed to Prove His Defense of Whistleblower Retaliation

In an adverse action, an appellant's claim of whistleblower reprisal is treated as an affirmative defense.  *Campbell v. Department of the Army*, 123 M.S.P.R 674 ¶ 11 (2016).  In such cases, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a

---

[8] Appellant asserts that he filed a formal EEO complaint but that the agency never took further action.  IAF, Tab 57 at 20.  He attached a copy of a complaint, signed November 27, 2017.  IAF, Tab 38 at 458-59.  However, he has not offered corroborating evidence to show that he actually submitted the formal complaint to the agency.  Nor has he shown that he followed up with the agency after having purportedly failed to receive any response.

protected disclosure under section 2302(b)(8) or engaged in activity described under section 2302(b)(9)(A)(i), (B), (C) or (D), and that the disclosure or protected activity was a contributing factor in the agency's personnel action. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 15; *Campbell*, 123 M.S.P.R. 674 at ¶ 11.

Protected whistleblowing occurs when an appellant makes a disclosure that he reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *see Pridgen*, 2022 MSPB 31 at ¶ 52 (citing *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013)). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to, and readily ascertainable by, the employee could reasonably conclude that the actions evidenced a violation of a law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Pridgen*, 2022 MSPB 31 at ¶ 52; *Mudd*, 120 M.S.P.R. 365, ¶ 5.

If an appellant can prove by preponderant evidence that he made protected disclosures or engaged in protected activities, then he must also show that the protected disclosures or activities were a contributing factor in the disciplinary action. *Pridgen*, 2022 MSPB at ¶62. One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which an employee submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Pridgen*, 2022 MSPB 31 at ¶ 63; *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 20 (2013). The Board has held that personnel actions taken within one to two years of the protected disclosure or activity satisfy the timing prong of the knowledge/timing

test, but those that take place more than two years after the disclosure or activity may be too remote to satisfy this test. *Pridgen*, 2022 MSPB 31 at ¶ 63; *Agoranos*, 119 MSPR 498 at ¶ 21.

However, the knowledge/timing test is not the only way to prove protected activity was a contributing factor in a personnel action. The Board will consider any relevant evidence on the issue, including the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Pridgen*, 2022 MSPB 31, ¶ 65; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 13 (2016); *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 14-15 (2012). Contributing factor causation can also be established when a decision-maker without any retaliatory animus or knowledge is influenced by someone with knowledge. *See Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 19 (2023).

Appellant's Alleged Disclosures and Protected Activities

In his prehearing submissions Appellant claimed for the first time in this proceeding that in 2012, he filed a whistleblower complaint against Parisi with the agency's Office of Inspector General (OIG). IAF, Tab 31 at 8. He does not state what the complaint entailed. He claims he does not know the case number, but states that he was interviewed by a Division Director in 2013. *Id*. He provided no other details regarding this allegation. Although he has not proffered enough information to show that this contact with the OIG involved a disclosure under section 2302(b)(8), his contact with the OIG is protected activity under section 2302(b)(9)(c).

On March 9, 2016, Appellant filed a whistleblower complaint C1608180 with the agency's OIG. IAF, Tab 13 at 24, Tab 38 at 512-17, 520, 522, Tab 51-7 at 39-40, 44. In his complaint, he alleged that FEMA and several state and municipal agencies "expunged regulatory findings" and "abrogate[ed] FEMA

enforcement of regulatory requirements prescribed in 44 C.F.R. Part 350, NUREG 0642/FEMA-REP-1 and FEMA P-1028 REP Program Manual." IAF, Tab 38 at 515. He quoted several excerpts from these sources and alleged that "State REPP directors within FEMA Region V began impugning the professional competence and personal integrity of FEMA and contract evaluators who reported regulatory infractions while conducting REPP plan reviews and exercise evaluations." *Id.* at 516.

In March 2016, Appellant filed similar complaints with the Nuclear Regulatory Commission's OIG, the U. S. Office of Special Counsel (OSC), House of Representatives Speaker Paul Ryan, Senator Ron Johnson. IAF, Tab 13 at 24, Tab 51-7 at 106-07. Construing Appellant's complaint broadly, his disclosure evidences an allegation of a violation of law, rule or regulation and is protected under section 2302(b)(8)(B)(i).[9] Further, his contact with the agency's OIG is protected under section 2302(b)(9)(C).

In October 2018, Appellant filed complaints with Senator Johnson's staff, Speaker Ryan's staff, an individual with the agency's Whistleblower Protection Unit, and a Nuclear Regulatory Commission Inspector. IAF, Tab 52-5 at 31-32. He provided each with a three-inch package of all the materials he believed related to "ongoing violations of regulatory requirements." *Id.* Appellant did not provide any evidence of the content of the purported regulatory violations. Therefore, he had failed to demonstrate that he made protected disclosures under section 2302(b)(8). However, his disclosure to the Whistleblower Protection Unit is protected under section 2302(b)(9)(C).

---

[9] Appellant also complained that Technical Hazards Program Specialists were reassigned as Emergency Management Specialists, which allegedly impacted the affected employees' ability to meet their individual performance plan goals and successfully compete for promotions. IAF, Tab 38 at 516. This complaint appears to express dissatisfaction over changes to his job, but without more, does not reflect gross mismanagement, a violation of law, rule or regulation, or a substantial and specific danger to public safety.

In June 2020, Appellant filed a Hatch Act complaint with the OSC alleging that 16 FEMA employees were using government equipment on duty time to support political activities. IAF, Tab 13 at 10, Tab 52-5 at 37. His Hatch Act complaint alleges violation of law under section 2302(b)(8)(B)(i). *See Christensen v. Department of Justice*, 82 M.S.P.R. 430, ¶ 10 (1999). Further, disclosing information to the OSC is protected under section 2302(b)(9)(C).

In 2021, Appellant brought an action in the District Court for the Northern District of Illinois alleging whistleblower retaliation for disclosures he made in 2014. IAF, Tab 13 at 22, Tab 31 at 9. Appellant offered no evidence of the whistleblower issues he purportedly pursued before the district court. Thus, I find that he has not satisfied his burden of demonstrating that his district court complaint involved a protected disclosure under section 2302(b)(8) or activity protected under section 2302(b)(9)(A)(i).

In March 2023, Appellant filed a complaint with Senator Johnson, Congressman Steil and the agency's OIG concerning the February 2023 proposal to remove him from his position. IAF, Tab 52-5 at 38. To the extent that Appellant made a complaint to the OIG, this action was protected under 2302(b)(9)(C). However, Appellant did not offer sufficient information to allow me to ascertain whether the March 2023 complaint to Senator Johnson or Congressman Steil involved disclosures protected under section 2302(b)(8). Accordingly, he failed to meet his burden of proving that his March 2023 complaints involved protected disclosures.

Based on the foregoing, I find that Appellant met his burden of proving that he made protected disclosures to the agency's OIG, the Nuclear Regulatory Commission's OIG, the OSC, Senator Ryan, and Senator Johnson in March 2016 and when he filed a complaint of Hatch Act violations with the OSC in June 2020. I further find that he met his burden of proving that he engaged in protected activity when he filed a whistleblower complaint with the agency's OIG in 2012; filed whistleblower complaint C1608180 with the agency's OIG in

March 2016; made disclosures of ongoing regulatory violations to the agency's Whistleblower Protection Unit in October 2018; filed a complaint of Hatch Act violations with the OSC in June 2020; and filed a complaint with the agency's OIG in March 2023. I find he failed to prove by preponderant evidence that his October 2018 alleged disclosures to Senator Johnson's staff, Speaker Ryan's staff, the agency's Whistleblower Protection Unit and a Nuclear Regulatory Commission Inspector, any alleged disclosures made during his 2021 District Court action, and his March 2023 complaints to Senator Johnson, Congressman Steil and the agency's OIG regarding his proposed removal were protected under section 2302(b)(8).

Contributing Factor

Appellant has offered no evidence that his 2012 OIG complaint was a contributing factor in his removal. Other than stating that he made this complaint in his prehearing submissions, he has not raised this issue elsewhere in his pleadings. He did not offer any documentary evidence addressing the 2012 complaint. Nor was it addressed in any of the witnesses' testimony. More specifically, Appellant has not offered evidence that Parisi or O'Leary was aware of the 2012 complaint. Further, this complaint was filed more than 11 years prior to his removal. Finally, there is no evidence in this record of circumstances that would support a conclusion that the 2012 OIG complaint was a contributing factor in his removal.

Appellant admitted that he did not tell anybody in his chain of command at FEMA about the OIG complaint he filed in March 2016, his OSC complaints, or his complaints to Senator Johnson's office. IAF, Tab 52-5 at 15, 17-20, 37-39. Further, in his March 2016 OSC complaint, he named several agencies as offenders, but he did not identify Parisi or O'Leary in his complaint. *Id.* at 13. He testified that he did not tell anyone about the Hatch Act violation report, the complaint was dismissed, and no findings of misconduct ensued. *Id.* at 37-38. Appellant also stated that he did not tell anyone in FEMA about any of his

disclosures. *Id.* at 17.[10]   Appellant admitted that no one was affected by any disclosure he ever made. *Id.* at 18-20.   Finally, both Parisi and O'Leary provided unrebutted testimony that they were unaware of any of Appellant's whistleblower complaints or disclosures. IAF, Tab 50-8 at 27, 30, 31, 71, 96, 97.   In light of the foregoing, I find that Appellant has failed to meet his burden of demonstrating that his March 2016 complaints to the OIG and various politicians, his 2018 disclosure to the agency's Whistleblower Protection Unit or his 2020 Hatch Act complaints were a contributing factor in his removal.

Appellant filed his March 2023 OIG complaint in response to the February 15, 2023 proposal to remove him. IAF, Tab 52-5 at 38.   Therefore, I find it was not a contributing factor in O'Leary's proposal to remove him.   *McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 20 (2008) (a personnel action is not retaliation for an alleged protected disclosure when the personnel action occurred before the protected activity).

Appellant also testified that he did not tell anyone from FEMA that he had filed this March 2023 OIG complaint, which was dismissed in May 2023. IAF, Tab 52-5 at 38-39.   Appellant has not offered any evidence to show that Parisi was aware of the March 2023 OIG complaint or that anyone who was aware of that complaint influenced Parisi's decision to remove him.   Consequently, I find that he has failed to meet his burden of proving that the 2023 OIG complaint was a contributing factor in his removal.

In sum, I find Appellant has failed to meet his burden of demonstrating by preponderant evidence that his various whistleblower disclosures and protected activities were a contributing factor in his removal.   Therefore, his affirmative defense of whistleblower retaliation fails.

---

[10] At the hearing, he initially testified that he "may have" told Steve Tulley about his 2018 disclosure to the agency's Whistleblower Protection Unit, but in December 2023, he testified under oath that he had told no one. IAF, Tab 52-5 at 32. Appellant offered no explanation for the change in testimony at the hearing, and therefore, I credit his December 2023 sworn testimony.

**Appellant Failed to Demonstrate His Removal Was in Violation of Law**

Appellant claimed that the disciplinary action violated 44 C.F.R. Part 350. IAF, Tab 35 at 8. Appellant has not shown how these regulations are applicable to adverse actions under Title 5. The regulations relate to FEMA's role in emergency preparedness, specifically its review and approval of state and local emergency plans and preparedness. While Appellant's position involved working with state and local partners in carrying out their responsibilities under Part 350, the regulations do not address FEMA employee discipline. Accordingly, I find that this affirmative defense fails.

**The Penalty of Removal Was Reasonable**

Where the agency has proven its sole charge, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 19 (citing *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014)). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors, or the penalty clearly exceeds the bounds of reasonableness. *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1016-17 (Fed Cir. 2019) (Board explicitly prohibited from independently determining penalties); *Thomas*, 2022 MSPB 35, ¶ 19.

It is well established that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Thomas*, 2022 MSPB 35, ¶ 20 (citing

*Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶ 9 (2013); *Kirkland-Zuck v. Department of Housing and Urban Development*, 90 M.S.P.R. 12, ¶ 19 (2001), *aff'd*, 48 F. App'x 749 (Fed. Cir. 2002)). Other factors to consider are: the employee's job level and type of employment (factor 2); the employee's past disciplinary record (factor 3); the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers (factor 4); the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties (factor 5); the consistency of the penalty with those imposed on other employees for the same or similar offense (factor 6); the consistency of the penalty with any applicable agency table of penalties (factor 7); the notoriety of the offence or its impact on the reputation of the agency (factor 8); the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question (factor 9); the employee's potential for rehabilitation (factor 10); any mitigating circumstances surrounding the offense, such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter (factor 11); the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employe or others (factor 12). *Douglas*, 5 M.S.P.R. at 305-06.

When issuing the decision to remove Appellant, Parisi compiled a written *Douglas* factor analysis. IAF, Tab 8 at 164-69. In his analysis, Parisi noted that Appellant's conduct was serious in nature as he displayed inappropriate conduct on three separate occasions, that his comments were "inappropriate, offensive, racist, unprofessional, and antithetical to FEMA's Core Values." *Id.* at 164. He also noted that the conduct was intentional and repeated. *Id.*

As indicated above, several participants of the all-hands meeting complained that Appellant's post was disrespectful to the Deputy Regional Administrator. The Board has found that disrespect toward a supervisor is a

serious offense that "seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once." *Redfearn v. Department of Labor*, 58 M.S.P.R. 307, 316 (1993); *see also Webster v. Department of the Army*, 911 F.2d 679, 688 (Fed. Cir. 1990) *reh'g en banc denied*, 926 F.2d 1149 (Fed. Cir.), *cert. denied*, 502 U.S. 861 (1991) ("The [administrative judge] properly noted that the [agency] 'cannot tolerate disrespectful conduct to a supervisor...'"); *Fonville v. Department of Health and Human Services*, 30 M.S.P.R. 351, 355 (1986) ("an agency is entitled to have an employee respect authority in the form of supervisors as well as rules and regulations, and an employee is expected to deport himself or herself in conformance with accepted standards."). Further, Parisi's observation that the conduct was repeated and intentional is reflected in the three specifications of conduct unbecoming in the removal action as well as the prior disciplinary action he received for similar conduct. Accordingly, I find that Parisi's assessment of the first *Douglas* factor was persuasive and well supported.

Parisi noted that while Appellant did not hold a supervisory, lead or fiduciary position (the second *Douglas* factor), his role in developing and organizing a virtual conference widely attended by federal, state, tribal, local and private sector employees was public and prominent. IAF, Tab 8 at 165. Because the conference was only a part of his duties, however, Parisi found that this second *Douglas* factor was neither aggravating nor mitigating. *Id.*

Parisi noted that Appellant had previously received a thirteen-day suspension for Conduct Unbecoming a Federal Employee, Disruptive Behavior, and Failure to Follow Instructions. *Id.* He found Appellant's prior disciplinary history—the third *Douglas* factor—to be aggravating due to Appellant's repeated unbecoming conduct. *Id.*

With respect to the fourth *Douglas* factor, Parisi noted Appellant had 15 years of federal service and his recent performance evaluations had been

acceptable or better. *Id*. However, he stated that Appellant's ability to get along with his fellow coworkers had declined as his repeated conduct has eroded their trust. *Id*. Thus, he found this factor to be neither mitigating nor aggravating. *Id*.

In contrast, Parisi found the fifth *Douglas* factor to be aggravating. He noted that Appellant's repeated, unapologetic misconduct negatively impacted his confidence in Appellant's judgment, decision making, and ability to perform assigned duties professionally. *Id.*

Parisi reviewed a spreadsheet showing employees from FEMA Region V who had been disciplined in the prior 7 years. IAF, Tab 8 at 171, Tab 50-8 at 123. Other than Appellant, only one person had been previously disciplined. IAF, Tab 8 at 171, Tab 51-7 at 103-04. That individual was a GS-15 employee charged with making sexually inappropriate comments, seeking to upgrade his security clearance to include SCI[11] access and falsely reporting work hours. IAF, Tab 8 at 171, Tab 50-8 at 123. That individual had received a 30-day suspension for his first offense. IAF, Tab 8 at 171, Tab 50-8 at 123. In his written analysis, Parisi stated that "the suggested penalty [for Appellant] is harsher therefore, I consider this factor to be aggravating." IAF, Tab 8 at 171. This comment is not clear because it does not show how Parisi viewed Appellant's misconduct and penalty in comparison to those of the comparator. During the hearing, Parisi distinguished the comparator from Appellant in that the other individual was a GS-15 and had no prior discipline. IAF, Tab 50-8 at 123.

The Board has observed that "the fact that one employee receives a more severe penalty than that imposed on a comparator who has committed the same or similar misconduct should be considered in favor of mitigating the penalty in a given case, mitigation is by no means required in all such cases." *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶18. The Board further explained, "[t]here often will be a range of penalties that would fall within the tolerable limits of

---

[11] Sensitive compartmental information.

reasonableness in a given case. That an agency chooses to impose a penalty at the more lenient end of that range in one case should not mean that it cannot impose a penalty at the more severe end of that range in another case." *Id*. Thus, although Parisi's written explanation is unclear, his clarification at the hearing shows that he found that the lesser penalty imposed on the comparator for his first offense was not a compelling basis for imposing a penalty less than removal for Appellant's second offense.

Parisi also consulted the agency's table of penalties—the seventh *Douglas* factor. The penalty of removal was within the recommended range of penalties, for a second offense of misconduct involving inappropriate language toward employees or members of the public. IAF, Tab 8 at 166-67. Thus, the penalty of removal was consistent with the applicable table of penalties.

Parisi considered the eighth *Douglas* factor to be mitigating. IAF, Tab 8 at 167. He noted that although the "effin' stupid" comment was public, the chat message and the transit participants email were not communicated outside the agency. *Id*.

Parisi found the ninth *Douglas* factor to be aggravating because Appellant knew or should have known that he was required to comply with FEMA's Employee Discipline Manual and Personnel Standards of Conduct. *Id*. Parisi elaborated at the hearing that FEMA has annual mandatory training on standards of conduct that is required of all employees. IAF, Tab 50-8 at 158-59. He also noted that Appellant had previously been counseled and disciplined by his supervisors for inappropriate email communications. IAF, Tab 8 at 167, 404-13, Tab 50-8 at 159. The record reflects that in March 2016, Appellant was reprimanded for inappropriate communications with an attorney representing the State of Michigan. IAF, Tab 8 at 418. In that reprimand, Appellant was specifically advised that the FEMA manuals required him to exercise courtesy and professionalism when dealing with fellow workers, supervisors and members

of the public.  IAF, Tab 8 at 418.  He was reminded of this very same principle in the proposal and decision to suspend him in October 2018.  *Id.* at 411.

Parisi stated that he had no confidence in Appellant's potential for rehabilitation (the tenth *Douglas* factor).  *Id.* at 168.  He noted Appellant's previous discipline for inappropriate behavior and that he had shown neither a desire to change his behavior nor any remorse for his misconduct.  IAF, Tab 8 at 168, Tab 50-8 at 96.  He indicated that he was not aware of any other mitigating circumstances (*Douglas* factor 11).  IAF, Tab 8 at 168.

Parisi testified that he considered whether a lesser penalty was appropriate (the twelfth *Douglas* factor).  IAF, Tab 50-8 at 96.  Given that Appellant's misconduct was serious, intentional, repeated, and unapologetic and that, notwithstanding having received prior discipline for inappropriate behavior, he had shown neither a desire to change behavior nor any remorse for his misconduct, Parisi concluded that any penalty short of removal would not have been effective or appropriate.  *Id*.

Based on Parisi's articulated analysis of all of the relevant *Douglas* factors, I find that his penalty determination was sound and well within the tolerable bounds of reasonableness.  Therefore, it should not be disturbed.

**Appellant's Motion for Judicial Notice Does Not Warrant Reopening the Record**

The record was fully developed at the time of the hearing, and it closed on May 24, 2024.  On February 4, 2025, Appellant filed a motion requesting that I take into consideration several Executive Orders of the President of the United States, including Executive Order 14147, "Ending the Weaponization of the Federal Government" (January 20, 2025),  Executive Order 14148,  "Initial Rescissions of Harmful Executive Orders and Actions" (January 20, 2025), Executive Order 14151, "Ending Radical and Wasteful Government DEI Programs and Preferencing" (January 20, 2025), Executive Order 14171, "Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce" (January 21, 2025), Executive Order 14173, "Ending Illegal

31

Discrimination and Restoring Merit-Based Opportunity" (January 21, 2025), Executive Order 14180, "Creating a Council to Assess the Federal Emergency Management Agency" (January 24, 2025) in adjudicating this matter. IAF, Tab 59.

Generally, once the record has closed, additional evidence or argument will not be accepted unless: the submitting party shows the evidence or argument was not readily available before the record closed or it is in rebuttal to new evidence or argument submitted by the other party just before the record closed. 5 C.F.R. § 1201.59(c).

Although the motion relates to Executive Orders that were not in existence at the time of the hearing in this case, I find that the motion does not include material evidence or argument. In his motion, the Appellant attempts to relitigate the propriety of the conduct cited in Specification 1. He seems to argue that his conduct was justified and that the Executive Orders support his conduct because the programs and people toward whom his conduct was directed (diversity, equity and inclusion (DEI) programs and those who facilitate them) may also be the targets of the Executive Orders he cites.

Appellant's misconduct involved disruptive and disrespectful behavior towards fellow employees and internal and external stakeholders in large group settings. Although some individuals who articulated complaints against him perceived his comments as "racist," Appellant was not charged with violating DEI programs or initiatives. Rather, he made disrespectful disruptive comments during one such program.

The Executive Orders do not purport to excuse disrespectful or disruptive conduct if the employee directs it at DEI programs or employees who participate in DEI initiatives or activities. Most importantly, those programs and initiatives were lawful and in effect at the time of Appellant's misconduct. Consequently, I find that Appellant's February 4, 2025 submission does not contain new and

material evidence or arguments.  Therefore, it was not considered in issuing this initial decision.

In sum, I find the agency met its burden of proving that Appellant engaged in the charged misconduct and that his removal promotes the efficiency of the service.  Further, Appellant has failed to prove his affirmative defenses. Therefore, the removal decision is affirmed.

## DECISION

The agency's action is AFFIRMED.

*Mary L. Hauser*

FOR THE BOARD:                     _____
                                                     Mary L. Hauser
                                                     Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date.  See 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **August 6, 2025**, unless a petition for review is filed by that date.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  Any petition for review must be filed within 35 days after the date of issuance of the initial decision or, if the petitioner shows that the initial decision was received more than 5 days after the date of issuance, within 30 days after the date the petitioner received the initial decision. The date that the petitioner receives the initial decision is determined according to the standard set forth at § 1201.22(b)(3), pertaining to an appellant's receipt of an agency decision. If the petitioner is

represented, the 30-day time begins to run upon receipt of the initial decision by either the representative or the petitioner, whichever comes first. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

Your petition must state your objections to the initial decision, including all of your legal and factual arguments, and must be supported by references to applicable laws or regulations and by specific references to the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov/).

## Criteria for Granting a Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition for review. Situations in which the Board may grant a petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner

who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words. A reply to a response to a petition for review is limited to 15 pages or 3750 words. A party relying on word count to adhere to the length limitation must include certification of the word count with their pleading. Argument formatted such that the length of the pleading cannot be determined may be rejected. Computer generated and typed pleadings must use no less than 12-point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. Length limitations may not be circumvented by including argument in attachments. Failure to comply with length limitations, after sufficient opportunity to comply, may lead

to dismissal of the petition for review. A request for leave to file a pleading that exceeds the limitations must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length.

If you file a petition for review, you should not include documents that were part of the record below, as the entire administrative record will be available to the Board. Any petition for review must be filed within 35 days after the date of issuance of the initial decision or, if the petitioner shows that the initial decision was received more than 5 days after the date of issuance, within 30 days after the date the petitioner received the initial decision. The date that the petitioner receives the initial decision is determined according to the standard set forth at § 1201.22(b)(3), pertaining to an appellant's receipt of an agency decision. If the petitioner is represented, the 30-day time period begins to run upon receipt of the initial decision by either the representative or the petitioner, whichever comes first.

Any response to a petition for review must be filed within 25 days after the date of service of the petition. Any reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review. The Board's regulation at 5 C.F.R. § 1201.23 governs the computation of time.

## NOTICE OF LACK OF QUORUM

While administrative judges may continue to issue initial decisions like this one, the Board must have two or more members (known as a quorum) to issue decisions on petitions for review (PFR). See 5 U.S.C. § 1201; 5 C.F.R. § 1200.3(a), (e). Currently, the Board only has one member, so it is unable to issue any final Board decisions on PFRs. This means that while parties may still

file PFRs on initial decisions during this time, no decisions on them will be issued until at least two members are in place, thereby restoring the Board's quorum. Importantly, the absence of a quorum does not extend any deadlines for filing a PFR. Anyone filing a PFR must still meet the deadline outlined above.

## NOTICE TO AGENCY/INTERVENOR

Any party to the proceeding, the Director of the Office of Personnel Management (OPM), or the Special Counsel (under 5 U.S.C. 1212(c)) may file a petition for review. Each party is limited to filing a single petition for review, response to a petition for review, and reply to a response to a petition for review. A petition for review filed by an agency should address the agency's compliance with any interim relief requirements and should contain a certification, as set forth at 5 C.F.R. § 1201.116(a).

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general.** As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain

38

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within **60 days** of the date this decision becomes final under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

40

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Service Karl Rabenhorst
       Served on email address registered with MSPB

Appellant Representative

Electronic Service Michael Smith
       Served on email address registered with MSPB

Agency Representative

Electronic Service Dawn Williams
       Served on email address registered with MSPB

| 07/02/2025 | _Allison McKinley_ |
|---|---|
| (Date) | Allison McKinley |
| | Paralegal Specialist |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KARL RABENHORST,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No.  1:26-cv-04635** |
| | ) | |
| **MERIT SYSTEMS PROTECTION BOARD,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**APPEAL ON MSPB JUDGEMENT FOR LACK THERE OF**
**QUORUM ON REVIEW OF REMOVAL BASED ON DISCRIMINATION**

# EXHIBIT B

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| KARL RABENHORST, | DOCKET NUMBER |
| Appellant, | CH-0752-23-0296-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: March 27, 2026 |
| Agency. | |

Michael Thomas Smith, Lisle, Illinois, for the appellant.

Dawn L. Williams, Washington, D.C., for the agency.

BEFORE

James J. Woodruff II, Member

ORDER

The appellant has filed a petition for review of the initial decision, which affirmed his removal. Vice Chairman Kerner has recused himself from this case. Because there is no quorum to alter the administrative judge's initial decision, the initial decision now becomes the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1200.3(b) (5 C.F.R. § 1200.3(b)). This decision shall not be considered as precedent by the Board in any other case. 5 C.F.R. § 1200.3(e).

2

## NOTICE OF APPEAL RIGHTS[1]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[1] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

4

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals

5

of competent jurisdiction.[2]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[2]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

6

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    *Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

Electronic Service    Karl Rabenhorst

Served on email address registered with MSPB

### Appellant Representative

Electronic Service    Michael Smith

Served on email address registered with MSPB

### Agency Representative

Electronic Service    Dawn Williams

Served on email address registered with MSPB

| 03/27/2026 | *Markita Bryant* |
|---|---|
| (Date) | Markita Bryant |
| | Paralegal Specialist |